UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO JOSE TORREALBA PEREZ,<br><br>         Petitioner,<br><br>v.<br><br>JEREMY CASEY, Warden, Imperial Regional Detention Center, San Diego, California; DANIEL A. BRIGHTMAN, Acting Field Office Director, San Diego Office of Detention and Removal, U.S. Immigrations and Customs Enforcement; U.S. Department of Homeland Security; TODD M. LYONS, Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security; SIRCE OWEN, Acting Director for Executive Office for Immigration Review; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; PAM BONDI, Attorney General of the United States,<br><br>         Respondents. | Case No.: 26-cv-1095-JES-MMP<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[ECF No. 1] |

Before the Court is Petitioner Alejandro Jose Torrealba Perez's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"), filed on February 20, 2026. ECF No. 1. Petitioner is a Venezuelan man currently detained at the Imperial Detention Center. *Id.* at 2. Petitioner raises both due process and regulatory challenges to his current detention. *Id.* at 25-28. Pursuant to the Court's order, Respondents responded to the Petition on February 25, 2026, arguing that the Court lacks jurisdiction and, in the alternative, Petitioner is mandatorily detained under 8 U.S.C. § 1225. ECF No. 4. For the reasons set forth below, the Court **GRANTS** the Petition.

## I.     BACKGROUND

Petitioner is a citizen of Venezuela who fled his home country due to political violence following his participation in protests and social movements. Pet. ¶¶ 7-9. He arrived in the United States on October 18, 2021, and was taken into custody for 36 days. *Id.* ¶ 9. On November 22, 2021, Department of Homeland Security ("DHS") granted Petitioner humanitarian parole. *Id.* ¶ 10. Petitioner has complied with the conditions of that parole ever since. *Id.* Petitioner's parole authorization states that it was valid for one year from its issuance. ECF No. 1-2 at 2.

When he was granted parole, Petitioner also received a Notice to Appear ("NTA") requiring him to attend court at a specific time and place. *Id.* ¶ 12. However, the court appointment did not go forward on the time and date listed on the NTA. *Id.* Petitioner later attempted to apply for asylum, but his application was rejected on the basis of an expedited removal order that had not yet been issued. *Id.* ¶ 14.

On October 31, 2023, Petitioner received approval of Temporary Protected Status ("TPS"), which remained active until April of 2025. *Id.* ¶ 14. Petitioner was unable to renew his TPS due to the termination of Venezuelan TPS designations in October 2025. *Id.*

Petitioner was issued another NTA in 2024, which he speculates may have been due to DHS discovering their error in his prior NTA or removal order mix-up. *Id.* ¶ 16. He had one court hearing prior to his present re-detention. *Id.*

On February 9, 2026, Petitioner was arrested by DHS while driving from California to Arizona. *Id.* ¶ 17. Petitioner states that nothing has materially changed in his circumstances, and he was not given notice of reasons for hist re-detention. *Id.* ¶ 19.

## II.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III.   DISCUSSION

In his petition, Petitioner argues that his re-detention and the manner in which it was carried out violates the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act. Pet. ¶¶ 73-90. The Court agrees.

### A. Jurisdiction

As an initial matter, Respondents argue that the Court does not have jurisdiction over areas of immigration law, like the decision to initiate removal proceedings against an alien, designated by law to the executive branch. ECF No. 4 at 3. As discussed in other cases before this Court and in this District, the Court agrees with the government's underlying proposition but finds that it has jurisdiction to hear Petitioner's claims that his detention is unlawful. *See Sanchez v. Noem*, 25-cv-2995-JES-BJW, ECF No. 11 (S.D. Cal. Sept. 26, 2025); *Alegria Palma v. LaRose*, 25-cv-1942-BJC-MMP, ECF No. 14 (S.D. Cal. Aug. 11,

2025); *Mendez Los Santos v. LaRose*, 25-cv-2216-TWR-MSB, ECF No. 14 (S.D. Cal. Sept. 4, 2025) (granting petition by minute order); *Rokhifirooz v. LaRose et al.*, No. 25-cv-2053-RSH-VET, 2025 WL 2646165 (S.D. Cal Sept. 15, 2025).

## B. Due Process

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 679. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. A person at risk of suffering a serious loss being given notice and an opportunity to be heard, in a meaningful manner and at a meaningful time, is the essence of procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Courts have identified various ways that a petitioner may be granted some form of parole. The choice is "discretionary and is made on a case-by-case basis." *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *6 (E.D. Cal. Oct. 16, 2025). Parole can be made for humanitarian reasons or for it providing a significant public benefit under 8 U.S.C. § 1182(d)(5)(A), or it can be for conditional parole under 8 U.S.C. § 1226(a). *Id.*

While courts have recognized these as distinct procedures, they have consistently applied the same procedural due process analysis to petitioners under these forms of parole. In the context of 8 U.S.C. § 1182(d)(5)(A), courts have held that such parole status entitles the petitioner to certain due process rights under both procedural due process and the Administrative Procedure Act ("APA"). *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146 (D. Or. 2025) (finding violation under APA); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 154 (W.D.N.Y. 2025) (finding violation under procedural due process).

Similarly, for conditional release under § 1226(a), the court in *Pinchi* explained similar procedural due process rights:

> [Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria. The regulations authorizing ICE to release a noncitizen from custody require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). [Petitioner] was apprehended by ICE officers when she crossed the border into the United States . . . ICE then released her on her own recognizance. As ICE was not authorized to release [Petitioner] if she was a danger to the community or a flight risk, the Court must infer from [the] release that ICE determined she was neither. [Petitioner's] release from ICE custody constituted an "implied promise" that her liberty would not be revoked unless she "failed to live up to the conditions of her release." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). The regulatory framework makes clear that those conditions were that she remain neither a danger to the community nor a flight risk. . . . Accordingly, [Petitioner's] private interest in retaining her liberty is significant.

*Pinchi*, 792 F. Supp. 3d at 1034-35.

Courts have repeatedly held that liberty interests do not expire when parole does. "When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). Rejecting similar arguments from the government, the court held that "this private interest did not expire along with Petitioner's parole agreement. Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process." *Id.*; *see also Rodriguez Cabrera v. Mattos*, No. 2:25-CV-01551-RFB-EJY, 2025 WL 3072687, at *11 (D. Nev. Nov. 3, 2025) ("Petitioner has a fundamental interest

in freedom from physical confinement, and that liberty interest is particularly strong given his initial release from detention in 2022, and the fact that Respondents did not seek his return to custody upon the expiration of his parole in December 2022, or in the three years since."); *Omer G. G. v. Kaiser*, No. 1:25-CV-01471-KES-SAB (HC), 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025) ("[P]etitioner's liberty interest did not expire along with his parole.").

Here, Petitioner was granted parole after he entered and was processed in this country, creating a liberty interest protected by the Due Process clause. *See* ECF No. 1-2 at 2. The liberty interest underlying that parole has not expired through any of the stages of his immigration case, including the automatic, time-based end of his parole. *See Ramirez Tesara*, 800 F. Supp. 3d at 1136. As this Court explained in *Sanchez v. LaRose*, due process requires not only notice and opportunity to be heard, but also that the notice and opportunity be meaningful. No. 25-CV-2396-JES-MMP, 2025 WL 2770629 at *3 (S.D. Cal. Sept. 26, 2025). Petitioner alleges that he was arrested and re-detained without notice or opportunity to be heard regarding the loss of his liberty interest. Pet. ¶¶ 17-19. The Court disagrees with Respondent that an expiration of parole automatically extinguishes any due process claim. *See Rodriguez Cabrera*, 2025 WL 3072687 at *11; *Omer G. G,* 2025 WL 3254999 at *5. On the record before the Court, there were no changed circumstances justifying Petitioner's re-detention, and therefore any notice and opportunity to be heard that did occur could not have been meaningful. *See Rios v. Noem*, No. 25-CV-2866-JES-VET, 2025 WL 3141207, at *2 (S.D. Cal. Nov. 10, 2025) ("An alien's opportunity to be heard regarding a change in his status is only meaningful if the government comports with its own internal standards regarding parole revocation. DHS has the authority to revoke an alien's supervised release 'at any time' on a discretionary, but not unlimited, basis."). Respondents' contention that Petitioner, who has lived in the United States for years, is mandatorily detained under 8 U.S.C. § 1225 is without merit under the caselaw on this issue before courts in this district.[1]

---

[1] *See, e.g., Garcia v. Noem,* 803 F. Supp. 3d 1064, 1076 (S.D. Cal. 2025); *Lopez v. Warden, Otay Mesa Det. Ctr.*, No. 25-CV-2527-RSH-SBC, 2025 WL 3005346, at *4 (S.D. Cal. Oct. 27, 2025); *Martinez v. Larose*, No. 3:25-CV-03449-DMS-

Accordingly, the Court finds that Respondents violated Petitioner's due process rights when they re-detained him on February 9, 2026.

## IV.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's writ of habeas corpus. Because the Court grants the petition on the Due Process ground and concludes that Respondents' revocation of Petitioner's parole violates procedural due process, Respondents are **ORDERED** to **immediately** release Petitioner from custody, subject to any conditions of his preexisting parole or other release that existed at the time he was re-detained. The Parties are **ORDERED** to file a Joint Status Report by **February 27, 2026**, confirming that Petitioner has been released. The Court **DENIES AS MOOT** the remainder of Petitioner's claims. The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Dated: February 26, 2026

Honorable James E. Simmons Jr.
United States District Judge

---

MMP, 2025 WL 3640995, at *3 (S.D. Cal. Dec. 16, 2025); *Mosqueda v. Noem*, No. 25-CV-2304 CAS (BFM), 2025 WL 2591530, at *5 (C.D. Cal. Sept. 8, 2025); *Vazquez v. Feeley*, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082, at *11–16 (D. Nev. Sept. 17, 2025).